THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM
RAND, Respondent, *v.* CHARLES L. CRAIG, as Comptroller
of the City of New York, Appellant.

First Department, March 4, 1921.

**Attorney-General — Special Deputy Attorney-General — power and
authority of Attorney-General to fix amount of remuneration
for special deputy appointed to act in New York county — claim
not subject to audit by city comptroller — what constitutes
fixation of compensation — Executive Law, sections 61 and 62,
subdivision 2, construed — Greater New York charter, section
1583, construed.**

The compensation of a special deputy appointed by the Attorney-General
under subdivision 2 of section 62 of the Executive Law, to act in New
York county, may be fixed by the Attorney-General and is not subject
to audit by the city comptroller.

The provisions of section 61 of the Executive Law, as amended, to the effect
that the Attorney-General is given power to " appoint such deputies as
he may deem necessary and fix their compensation within amounts
appropriated by the Legislature," simply applies to salaries which are
to be paid by the State, and does not limit compensation to be paid to
a Deputy Attorney-General by a county in which work is performed.

In such case the approval by the Attorney-General of the amount of a bill
rendered is in law a fixation of compensation *pro tanto* within the meaning
of the foregoing statute.

Section 1583 of the Greater New York charter, which provides that all
county charges " shall be audited," does not apply to a claim for com-
pensation by a Special Deputy Attorney-General appointed by the
Attorney-General who fixes the compensation of the deputy.

PAGE and GREENBAUM, JJ., dissent, the latter with opinion.

APPEAL by the defendant, Charles L. Craig, as comptroller
of the city of New York, from an order of the Supreme Court,
made at the New York Special Term and entered in the
office of the clerk of the county of New York on the 29th day
of October, 1920, granting relator's motion for a peremptory
writ of mandamus requiring the defendant, as comptroller of
the city of New York, to draw his warrant to the amount of
$15,000 payable to relator.

*John F. O'Brien* of counsel [*George P. Nicholson* and *Russell
Lord Tarbox* with him on the brief; *John P. O'Brien, Cor-
poration Counsel*], for the appellant.

*Nathan A. Smyth,* for the respondent.

SMITH, J.:

Upon July 11, 1919, the Governor appointed an Extraordinary Trial Term of the Supreme Court for New York county and designated Mr. Justice WEEKS to hold the term and to cause the grand jury to be drawn and to serve. The term convened upon August 11, 1919. On February 19, 1920, the Governor, pursuant to section 62 of the Executive Law, required the Attorney-General to attend in person or by deputy at such term and in place and stead of the district attorney of New York county, to exercise all the powers and perform all the duties conferred upon him by section 62 of the Executive Law. On March 12, 1920, the Attorney-General appointed William Rand the Special Deputy Attorney-General, and directed him to conduct all proceedings before the grand jury and before the court which the Attorney-General had been authorized by the Governor to conduct personally or by deputy. It thus appears that the relator Rand was duly appointed as Deputy Attorney-General to act for and in the place of the Attorney-General under subdivision 2 of section 62 of the Executive Law (as amd. by Laws of 1911, chap. 14). That subdivision reads as follows: " Whenever required by the Governor, attend in person, or by one of his deputies, any term of the Supreme Court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury such criminal actions or proceedings as shall be specified in such requirement; in which case the Attorney-General or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the Attorney-General or the Deputy Attorney-General so attending. In all such cases all expenses incurred by the Attorney-General, including the salary or other compensation of all deputies employed, shall be a county charge."

Upon July 3, 1920, a bill was presented to the city of New York by the said Rand for the sum of $15,000 on account of services rendered pursuant to this appointment. At the foot

of said bill appears: " The foregoing voucher is approved this 8th day of July, 1920, Charles D. Newton, Attorney-General." The comptroller does not question the liability of the city of New York to pay a reasonable sum for the services of the said relator pursuant to this appointment by the Attorney-General. His claim is that the relator's bill is subject to audit by himself, while the relator claims that the city is required to pay any sum fixed as his compensation by the Attorney-General, irrespective of the actual value of the services rendered.

The power of the Attorney-General to fix the compensation of the relator is claimed under section 61 of the Executive Law. That section (as amd. by Laws of 1911, chap. 204) formerly gave to the Attorney-General the power to " appoint such deputies as he may deem necessary and fix their compensation." In 1919, by chapter 165, there was added to this provision the following clause " within amounts appropriated therefor by the Legislature." Confessedly the relator has not shown that any appropriation had been made sufficient to cover his compensation, and it is further conceded that this section contains the only provision of law which authorizes a fixation of the compensation of a Deputy Attorney-General by the Attorney-General himself. The relator contends that this amendment of 1919 simply applies to the compensation of those deputies who are to be paid by the State, while the comptroller contends that the power of fixation given by the section as amended is limited to the compensation of such deputies as are paid by the State and does not apply to deputies who may be necessarily appointed for special work under subdivision 2 of section 62 of the Executive Law.

By section 149 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1917, chap. 401) all contracts of counties within the territorial limits of the city of New York made with any public officer or contracts of the county of New York made with a public officer acting in its behalf are made subject to audit and revision by the department of finance. It is further provided that the power so given to settle and adjust such claims shall not be construed to authorize the comptroller to dispute the amount of any

salary established by or under the authority of any officer or department authorized to establish the same.

By section 1583 of the Greater New York charter, although the heading of the section seems to refer simply to salaries of county officers, it is provided that all county charges *shall* *be* *audited* and paid by the department of finance out of the fund or appropriation applicable thereto. Unless, therefore, the power of the Attorney-General to fix the compensation of the deputies appointed under subdivision 2 of section 62 of the Executive Law, without legislative appropriation therefor, is given by section 61 of the Executive Law, the contention of the comptroller must prevail and the mandamus was improperly issued.

The main question for determination, therefore, is presented, whether under section 61, as amended, the power to fix the compensation of deputies so appointed exists with the Attorney-General without legislative appropriation therefor.

Prior to 1919 the right of the Attorney-General to fix such compensation would seem to me to be clearly given by section 61 of the Executive Law as the section then read. The duties to be performed by this deputy only could be performed by a deputy duly authorized and not by counsel employed, inasmuch as only such deputies are authorized to appear before the grand jury. Section 61 as it read prior to 1919 contained no limitation as to the deputies whose compensation was authorized to be fixed by the Attorney-General, and it would seem plain that the power so to fix the compensation of deputies was intended to include the power to fix the compensation of deputies appointed under subdivision 2 of section 62.

What effect then should be given to the amendment of section 61 by chapter 165 of the Laws of 1919. Prior to the enactment of this statute the Deputy Secretary of State was paid under the statute a salary of $4,000. (Executive Law, § 21.) By this statute it was provided that such deputy should receive an annual salary to be fixed by the Secretary of State within the amount appropriated therefor by the Legislature. Prior to that statute the Deputy Comptrollers received salaries fixed by the statute. (Executive Law, § 41, as amd. by Laws of 1911, chap. 568.) By chapter 165 of the Laws of 1919 these deputies were to receive salaries to be fixed by

the Comptroller within amounts appropriated therefor by the Legislature. Prior to that statute the Deputy Treasurer received a statutory salary. (Executive Law, § 52, as amd. by Laws of 1909, chap. 268.) By that statute the Deputy Treasurer was to receive an annual salary to be fixed by the Treasurer within the amount appropriated therefor by the Legislature. Prior to that statute the Deputy State Engineer received a statutory salary. (Executive Law, § 71.) By that statute [the salary of the Deputy State Engineer was to be fixed by the State Engineer within the appropriation allowed by the Legislature. The same provision, then, was inserted in section 61 of the Executive Law, governing the appointment of Deputy Attorneys-General, and while prior to the statute the salaries of such deputies were to be fixed by the Attorney-General, the same clause was added, that such compensation should be within the amounts appropriated therefor by the Legislature. When the full scope of the act of 1919 is thus considered, it will be seen that there was a general scheme to allow all State officers appointing deputies to be paid by the State, themselves to fix their salaries, but within the limitations of the appropriation made by the Legislature. When the history of this statute is considered and apparent purpose as indicated in reference to the fixation of salaries of deputies of other State officers, the intention is to my mind clearly indicated that the limitation upon section 61 as to the fixation of salary of Deputy Attorneys-General was a limitation which simply applied to the salaries which were to be paid by the State and that such limitation did not apply to the Deputy Attorneys-General whose compensation was to be paid by the county in which their work was to be performed. Any other construction would create complications which seem to me clearly to indicate the intention thus expressed. There is no power given under subdivision 2 of section 62 to appoint special deputies for the purpose of that work. The power must exist, if at all, under section 61, and if it be held that the power is there limited to the appointment of such deputies as can receive their salaries only within the appropriation allowed by the State, the power of the Attorney-General to appoint deputies for this special work would be circumscribed, if not practically nullified. But by

subdivision 2 of section 62 the Governor *may require* the Attorney-General to appear by himself or deputy, although a public exigency may call for similar work by the Attorney-General in many counties of the State during the year. There is no apparent reason for limiting the right of the Attorney-General in the appointment of deputies to those whose compensation may come within the amount appropriated by the Legislature when their compensation is made a county charge and is not a State charge. The law should not be so construed as to embarrass the Governor or the Attorney-General in executing the provisions of subdivision 2 of section 62, by limiting the right of appointment of the Attorney-General to those only whose compensation is provided for by legislative appropriation. It is further argued that this amendment, while not limiting the power of appointment of a Deputy Attorney-General, limits the power of fixation of compensation to the amount of the legislative appropriation. Here, again, the history and purpose of the enactment of the amendment of 1919 must be considered. If we construe section 61 as it read prior to the enactment of the act of 1919 to authorize the appointment of such deputies as the Attorney-General may deem necessary and to fix their compensation, the amendment should not be deemed any more a limitation upon the power of the Attorney-General to fix the compensation of deputies, executing the powers conferred by subdivision 2 of section 62, than to the appointment itself of such deputies. If I am right in my construction of the amendment of 1919 as affecting deputies only whose compensation is to be paid by the State as to the deputies appointed under subdivision 2 of section 62, whose compensation is to be paid by the county, section 61 must be read as before the amendment made by the Laws of 1919. This construction would give the power to the Attorney-General not only to appoint this relator as deputy, but to fix his compensation.

Another consideration is presented which bears somewhat upon the interpretation to be given to this amendment of 1919. These investigations by extraordinary terms with extraordinary grand juries are in a nature indefinite, both as to time and the amount of work necessarily involved. It would be practically impossible for the Legislature to make any

appropriation therefor before the performance of the work. It cannot be anticipated what may be the extent of the services which a deputy thus appointed may be called upon to perform. This situation should not be lost sight of in connection with the other considerations presented in interpreting the meaning of the amendment of section 61.

It is further argued that this fixation of compensation must be made before the performance of the services, and an approval of payment on account is not such a fixation. To this I cannot agree, by reason of the nature of those services. The services may extend over many months. If the Attorney-General had power to fix the compensation he would seem to have power to fix the compensation for services already performed, even though the work be not finished. An approval by the Attorney-General of the amount of a bill rendered is in law as I deem it a fixation of compensation *pro tanto* within the meaning of the statute.

These views seem to be in accord with the opinion of the Second Department in *People ex rel. Osborne* v. *Board of Supervisors* (168 App. Div. 765).

Again, it is contended that this construction should not be given to the statute, because of the danger of its abuse by the fixation of salaries of deputies so employed at an exorbitant amount. If the construction herein given to the statute prior to the amendment in 1919 be the proper construction, then such liability to abuse has existed for many years in this State without evidence of any harm resulting therefrom. The argument, thus made by the comptroller, should be addressed to the Legislature rather than to the court.

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., and DOWLING, J., concur; PAGE and GREENBAUM, JJ., dissent.

GREENBAUM, J. (dissenting):

Under subdivision 2 of section 62 of the Executive Law (as amd. by Laws of 1911, chap. 14), whenever required by the Governor, it becomes the duty of the Attorney-General, in person or by one of his deputies, to perform the duties

ordinarily performed by the district attorney of a given county with respect to "such criminal actions or proceedings as shall be specified" by the Governor. The concluding paragraph of subdivision 2 reads as follows: "In all. such cases all expenses incurred by the Attorney-General, including the salary or other compensation of all deputies employed, shall be a county charge."

In the absence of legislative authority in the Attorney-General to fix compensation of deputies assigned to special services under subdivision 2 of section 62 of the Executive Law, it would seem to follow, in case a deputy under regular appointment with a stated salary were assigned to perform the duties required by the Governor, that then the time devoted by such deputy to such services would be estimated upon the basis of his salary and the time consumed in performing the duties of district attorney. In case, however, of the appointment of a special deputy who is not under salary, I am of opinion, in the absence of the approval of the local authorities of the bill submitted by a special deputy, that the latter would be entitled to compensation for services based upon a *quantum meruit* which he could enforce by action.

Order affirmed, with ten dollars costs and disbursements.